UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

Q HOLDING COMPANY,                  :    CASE NO.: 5:17-CV-445
                                    :
       Plaintiff,               :
                                    :
  v.                                :    OPINION AND ORDER
                                    :    [Resolving Doc. 12]
REPCO, INC., dba PETERSON           :
ENTERPRISES,                        :
                                    :
       Defendant.               :
                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On March 3, 2017, Plaintiff Q Holding Company filed a fraudulent inducement claim against Defendant Repco, Inc., otherwise known as Peterson Enterprises ("Peterson").[1] The parties are currently involved in arbitration in Minnesota.

On April 28, 2017, Defendant Peterson filed a motion to dismiss or in the alternative to stay the action pending arbitration or decline jurisdiction.[2]

For the following reasons, the Court **DENIES** Defendant's motion to stay or decline jurisdiction and **DENIES** Defendant's motion to dismiss.

## I. Background

This case involves a sales representative agreement between Plaintiff Q Holdings and Defendant Peterson. Plaintiff claims Peterson fraudulently induced it to enter the contract.

Plaintiff Q Holdings is a rubber and plastic manufacturer for medical and automotive devices. Defendant Peterson is a sales and marketing company.[3] In 2016, the parties were

---

[1] Doc. 1.
[2] Doc. 12. Plaintiff opposes. Doc. 13.
[3] Doc. 1 at 3.

negotiating a potential sales agreement.[4] However, in March 2016, Defendant informed Plaintiff that Defendant was obligated to do sales work *exclusively* for Plaintiff's primary competitor, Flexan Corporation.[5] Defendant Peterson's negotiations with Plaintiff were on hold pending Defendant breaking ties with Flexan.[6]

Later, in June 2016, Defendant representative Steve Fischer told Plaintiff representative Craig Stark that Defendant was "free and clear" to do sales work for Plaintiff.[7] The parties signed the sales agreement on September 7, 2016.[8]

On December 16, 2016, Plaintiff received a letter from its competitor Flexan informing Plaintiff that Defendant was still obligated to work for Flexan.[9] The letter said the arrangement between Plaintiff and Defendant violated Defendant's non-compete agreement with Flexan.[10]

Defendant states that its non-compete with Flexan did not apply when it entered the contract with Plaintiff. Defendant and Flexan are currently arbitrating that issue.[11]

Plaintiff sent Defendant a notice of termination of their relationship on March 3, 2017.[12]

Defendant has commenced arbitration against Plaintiff in Minnesota under the Minnesota Termination of Sales Representative Act ("MTSRA").[13] Defendant argues that the MTSRA limits Plaintiff's right to terminate the relationship and to litigate in this Court.

---

[4] *Id*.
[5] *Id*.
[6] *Id*.
[7] *Id*.
[8] *Id*. at 4.
[9] *Id*. Flexan had terminated its formal contractual relationship with Defendant in December 2015. Doc. 12 at 4.
[10] Doc. 1 at 5.
[11] *Id*. at 6.
[12] *Id*. at 8.
[13] Doc. 12 at 15; Doc. 12-9 (demand for arbitration).

Case No. 5:17-CV-445
Gwin, J.

*Procedural History*

On March 3, 2017, Plaintiff Q Holding filed a fraudulent inducement claim against Defendant Peterson.[14] Plaintiff seeks a declaratory judgment that their contract was invalid from the outset.[15]

On April 28, 2017, Defendant Peterson filed a motion to dismiss or in the alternative to stay the action or decline jurisdiction.[16] Defendant argues that the fraudulent inducement claim underlying Plaintiff's declaratory judgment action cannot survive.[17] In the alternative, Defendant asks this Court to stay the action pending resolution of the parties' Minnesota arbitration or decline jurisdiction altogether.[18]

## II. Motion to Stay or Decline Jurisdiction

If the Court will not dismiss the case, Defendant argues the Court should decline jurisdiction or impose a stay pending arbitration. Because sending the case to arbitration or declining jurisdiction would make Defendant's merits dismissal arguments irrelevant, the Court first considers the motion to stay or decline jurisdiction first.

### A. Motion to Stay

Defendant seeks to arbitrate the dispute under the Minnesota Termination of Sales Representative Act ("MTSRA"). The MTSRA provides: "[t]he sole remedy for a manufacturer, wholesaler, assembler, or importer who alleges a violation of any provision of this section is to submit the matter to arbitration."[19]

---

[14] Doc. 1.
[15] *Id*. at 1.
[16] Doc. 12.
[17] *Id*.
[18] *Id*.
[19] Minn. Stat. Ann. § 325E.37.

-3-

Case No. 5:17-CV-445
Gwin, J.

Responding, Plaintiff argues the MTSRA does not apply here because the parties' agreement includes an Ohio choice-of-law provision and an Ohio forum selection clause.[20]

The Court agrees with Plaintiff Q Holding. The choice-of-law provision selecting Ohio law defeats Defendant's argument.[21]

Federal courts in diversity cases apply the forum state choice-of-law principles.[22] The Ohio Supreme Court has adopted the Restatement (Second) of Conflict of Laws, which provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[23]

Neither exception applies here.

First, Ohio has a substantial relationship to the case—Plaintiff has its principle place of business in North Canton, Ohio and Defendant does business here.[24]

Second, Minnesota also has an interest in the case because Defendant is a Minnesota corporation and has its principal place of business in Minneapolis. However, Minnesota's interest is not "materially greater" than Ohio's interest.

---

[20] Doc. 13 at 10.
[21] Doc. 1-1 at 6 (choice-of-law provision).
[22] *See Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).
[23] *Tele–Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987).
[24] Doc. 1 at

Case No. 5:17-CV-445
Gwin, J.

Because neither exception to the Restatement applies, the parties' choice-of-law provision controls and the MTSRA does not apply. The Court also notes that that where the parties agree to non-Minnesota law in a choice-of-law provision, courts routinely find that the MTSRA does not apply.[25] Accordingly, the Court **DENIES** Defendant's motion to stay pending arbitration.[26]

### B. Motion to Decline Jurisdiction

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[27] The Act is "an enabling Act, which confers discretion on the court rather than an absolute right upon the litigant."[28] "Federal courts, and federal district courts in particular, have 'unique and substantial discretion in deciding whether to declare the rights of litigants.'"[29]

---

[25] *See, e.g.*, *Warren E. Johnson Companies v. Unified Brand, Inc.*, 735 F. Supp. 2d 1099, 1109 (D. Minn. 2010) (finding MTSRA claim bared where parties' choice of provision stated the "[a]greement will be construed in accord with the laws of Mississippi"); *Automated Telemarketing Servs., Inc. v. Aspect Software, Inc.*, No. CIV 09-1308 DWF/FLN, 2009 WL 2461663, at *1 (D. Minn. Aug. 10, 2009) (finding the parties' Georgia choice-of-law provision prevents application of the MTSRA where the complaint "does not contain any allegation suggesting that ill motives were at work when the Georgia choice-of-law provision was selected"); *Hagstrom v. American Circuit Breaker Corp.,* 518 N.W.2d 46, 48 (Minn.App.1994) (finding that parties can waive the rights afforded by the MTSRA by agreeing to a choice of law clause which elects another state's laws).
[26] Defendant may argue Plaintiff cannot take advantage of the choice-of-law or forum-selection provisions in the contract because Plaintiff argues the contract is void. This argument fails. Courts generally hold that like an arbitration provision, forum-selection and choice-of-law are severable. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519(1974) ("Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion."); *CIC Grp., Inc. v. Mitchell*, No. 5:10-CV-02885, 2013 WL 774175, at *4 (N.D. Ohio Feb. 27, 2013) ("Plaintiff's general allegations that misrepresentations induced its entry into the contract do not invalidate the clause: A choice-of-law provision is valid unless the choice-of-law provision, itself, was induced by fraud. General allegations of fraud in the inducement do not invalidate a choice-of-law clause."); *Liafail, Inc. v. Learning 2000, Inc.*, No. CIV.A. 3:01CV-336-H, 2001 WL 1555308, at *2 (W.D. Ky. Aug. 29, 2001) (citing *Hansworth v. The Corporation,* 121 F.3d 956, 963 (5th Cir. 1997)) ("[f]raud and overreaching must be specific to a forum selection clause in order to invalidate it"). The forum-selection or choice-of-law provision is unenforceable only when a party argues that *particular* provision was fraudulently induced. Here, Plaintiff argues the entire contract was fraudulently induced. Therefore, the choice-of-law provision selecting Ohio law still controls.
[27] 28 U.S.C. § 2201.
[28] *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 241 (1952).
[29] *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 758-59 (6th Cir. 2014) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995) (listing five non-exclusive factors for courts to consider in exercising their discretion).

-5-

Case No. 5:17-CV-445
Gwin, J.

Defendant Peterson argues the Court should decline jurisdiction because after Plaintiff realized Defendant wanted to arbitrate in Minnesota, Plaintiff forum shopped. Specifically, Plaintiff rushed to file in this Court before Defendant could file its arbitration claim.[30]

Plaintiff responds that this Court lacks discretion to decline jurisdiction because the Complaint seeks more than a declaratory judgment—it also requests the alternative relief of rescission, as well as attorney fees.

Plaintiff's rescission claim provides an independent basis for jurisdiction.[31] Because the declaratory judgment and rescission claims are based on the same set of facts, it makes little sense to consider the rescission claim but decline to hear the declaratory judgment claim.[32] Accordingly, the Court will not decline jurisdiction.

### III. Motion to Dismiss

Defendant also argues that Plaintiff cannot support the Ohio fraudulent inducement claim that lies beneath its declaratory judgment action.[33]

#### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face."[34] The plausibility requirement is not a "probability requirement."[35] The Plaintiff need not try to prove his case in the

---

[30] Doc. 12 at 18-19.
[31] Doc. 1 at 10 (requesting that the Court declare "that the [Sales Representative Agreement] is void ab initio, or, in the alternative, [rescind] the SRA such that it is of no legal force or effect"); *Knowlton Const. Co. v. Liberty Mut. Ins. Co.*, No. 2:07-CV-0748, 2007 WL 4365690, at *3 (S.D. Ohio Dec. 13, 2007) (citing *Gov't Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1225-26 n. 6 (9th Cir. 1998) ("Because claims of bad faith, breach of contract, breach of fiduciary duty and *rescission* provide an independent basis for federal diversity jurisdiction, the district court is without discretion to remand or decline to entertain these causes of action") (emphasis added).
[32] *See* Knowlton Const., 2007 WL 4365690, at *3; *see also Farris v. State Farm Ins. Co.,* 617 F. Supp. 2d 654, 659 (N.D. Ohio 2008) ("jurisdiction over the entire complaint here [including the declaratory judgment claim], grounded in the mandatory jurisdiction over the claims for breach, is properly exercised").
[33] The parties' contract has a choice of law provision selecting Ohio law. Doc. 1 at 4.
[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).
[35] *Id*.

Case No. 5:17-CV-445
Gwin, J.

complaint. But there must be "more than a sheer possibility that the defendant has acted unlawfully."[36]

Federal Rule of Civil Procedure 8 provides the general pleading standard and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief."[37] In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the [] veracity" of "well-pleaded factual allegations."[38]

### B. Discussion

"Under Ohio law, a contract procured by fraudulent inducement may be rescinded [with] clear and convincing evidence of fraud . . ."[39] To prove fraudulent inducement, a plaintiff must show "(1) a false representation concerning a fact . . . material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance."[40]

Defendant argues its statement that Defendant was "free and clear" to work with Plaintiff is not actionable because it was (1) vague, (2) a legal rather than factual opinion, and (3) true.[41]

*Vagueness*

Defendant argues its representation that it was "free and clear" to work with Plaintiff was too vague to be actionable.[42] The Court disagrees.

---

[36] *Id*.
[37] Fed. R. Civ. P. 8(a)(2).
[38] *Id*.
[39] *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 873–74 (6th Cir. 2007) (citing *Household Fin. Corp. v. Altenberg*, 214 N.E.2d 667, 669–70 (Ohio 1966)).
[40] *Id*. at 874 (quoting *Lepera v. Fuson*, 613 N.E.2d 1060, 1063 (Ohio 1992); *Cohen v. Lamko, Inc.,* 462 N.E.2d 407, 409 (Ohio 1984)).
[41] Doc. 12 at 6-12.
[42] *Id*. at 7 (citing *Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 678 (6th Cir. 2001)) (finding no fraud where defendant's statements were "too indefinite to constitute a representation of fact for purposes of a fraud claim).

In context of the parties' ongoing negotiations, Defendant's promise was sufficiently definite. The parties put negotiations on hold because Defendant was concerned it was still bound by its contract with Flexan. When Defendant told Plaintiff that Defendant was "free and clear" of its obligations to Flexan, it made a clear representation—the non-compete no longer applied.

### *Legal vs. Factual Opinion*

Defendant's next argument is more convincing but ultimately fails at the motion to dismiss stage.

"It has been long held that, 'under Ohio law, a representation of law is an opinion and cannot form the basis of an action for fraud in the absence of a fiduciary relationship.'"[43] Defendant argues its statement was a legal opinion: Defendant was no longer bound by the non-compete agreement with Flexan and could move forward with Plaintiff.

Plaintiff argues that a "statement couched in legal terms is actionable if it expressly or by implication misrepresents the underlying facts."[44]

Plaintiff's argument defeats the motion to dismiss. Defendant's statement that it was "free and clear" to work with Plaintiff could be a misrepresentation of facts. Defendant had previously told Plaintiff that Defendant was working to "unwind" its sales relationship with Flexan.[45] When

---

[43] *Barnes v. Res. Energy Expl.*, 68 N.E.3d 133, 141 (Ohio Ct. App. 2016) (citing *Lynch v. Dial Finance Co. of Ohio No.* 1, 656 N.E.2d 714, 720 (Ohio Ct. App. 1995)).

[44] Doc. 13 at 6-8 (citing 50 Ohio Jur. 3d Fraud and Deceit § 31 (citing Restatement (Second) of Torts § 545 (1977)) ("[I]f a misrepresentation as to a matter of law includes, expressly or by implication, a misrepresentation of fact, the recipient is justified in relying upon the misrepresentation of fact to the same extent as though it were any other misrepresentation of fact. If a misrepresentation as to a matter of law is only one of opinion as to the legal consequences of facts, the recipient is justified in relying upon it to the same extent as though it were a representation of any other opinion."). Plaintiff also cites a bankruptcy case that is distinguishable from the applicable law here. In that case, the court found defendants' representation that a parcel of land was "free and clear of all security interests" was a material misrepresentation. *In re Abdallah*, No. 05-81475, 2007 WL 3047214, at *3 (Bankr. N.D. Ohio Oct. 18, 2007). Importantly, however, the bankruptcy code provision the court interpreted requires "a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness to its truth." *Id*. (citing 11 USC § 523). Nowhere in that portion of the code is a material misrepresentation of *fact* required. Under Ohio law, a misrepresentation of fact is specifically required.

[45] Doc. 1 at 3.

Case No. 5:17-CV-445
Gwin, J.

Defendant told Plaintiff it was "free and clear" to move forward with a contract, Defendant implied that Flexan and Defendant had finished the negotiation process.

Defendant's statement implies a factual rather than legal opinion. Defendant was not giving Plaintiff a legal opinion on the significance of Defendant's Flexan non-compete agreement. Rather, Defendant was making a representation as to where Defendant and Flexan stood in their negotiations. Plaintiff's story provides "more than a sheer possibility that the defendant has acted unlawfully."[46]

### *Truthfulness of Defendant's statement*

Defendant's last argument is that its statement—that Defendant was "free and clear" to work with Plaintiff and no longer bound by Defendant's non-compete with Flexan—was true. First, Defendant argues that the non-compete expired on April 26, 2016, before the "free and clear" representation to Plaintiff.[47] Second, even if it did not expire on April 26, 2016, Defendant argues Flexan is not entitled to the non-compete's benefit because Flexan terminated its contract with Defendant without cause.[48]

Defendant and Flexan are currently arbitrating the merits of Defendant's arguments.[49] The Court will not dismiss this case when the merits of Defendant's arguments are being litigated elsewhere.

---

[46] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[47] Doc. 12 at 9.
[48] *Id*.
[49] Doc. 1 at 6; Doc. 12-1 at

-9-

Case No. 5:17-CV-445
Gwin, J.

## IV. Conclusion

For the above reasons, the Court **DENIES** Defendant's motion to stay or decline jurisdiction and **DENIES** Defendant's motion to dismiss.

IT IS SO ORDERED.

Dated: May 22, 2017                           *s/ James S. Gwin*
                                                                JAMES S. GWIN
                                                                 UNITED STATES DISTRICT JUDGE